**CASE NO. 14-2166**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

PEGGY WALTON,

      Plaintiff-Appellee,

v.

NEW MEXICO STATE LAND OFFICE and
RAY POWELL,

      Defendants-Appellants.

---

On Appeal from the United States Court for the District of New Mexico
The Honorable District Judge James O. Browning
1:13-cv-00343-JB-SCY

---

**APPELLANT'S REPLY BRIEF**

---

Respectfully submitted,

*/s/ Scott P. Hatcher*
Scott P. Hatcher
Emma D. B. Weber
150 Washington Ave., Suite 204
Santa Fe, New Mexico 87501
(505) 983-6525

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT .......................................................................... 1

ARGUMENT .................................................................................................................. 4

I.     This Court Has Jurisdiction To Hear Commissioner
Powell's Appeal Addressing Whether The District
Court Erred When Determining Walton Established
Facts Sufficient To Conclude She Was The Victim
Of A Constitutional Violation Under Clearly
Established Law .......................................................................................... 4

II.    In The Tenth Circuit, Constitutionally Protected
Associational Activity Must Involve Matters Of
Public Concern .......................................................................................... 9

     A.    Walton's Associational Activity with
Commissioner Lyons Was Not Political in
Nature and Does Not Rise to the Level of a
Protected Public Concern .............................................................. 12

III.   As A Matter Of Law, Walton Fails To Establish A
*Prima Facie* Case For A First Amendment Political
Association Retaliation Case ................................................................. 18

     A.    The District Court Properly Utilized the
*McDonnell Douglas* Burden Shifting Analysis
To Walton's First Amendment Claims ..................................... 18

     B.    The Record is Insufficient for a *Prima Facie*
Showing that Commissioner Powell
Violated Walton's First Amendment Rights .......................... 21

IV.   Commissioner Powell's Approval Of The RIF Was
Objectively Reasonable And He Is Entitled To
Qualified Immunity ................................................................................ 25

CONCLUSION ........................................................................................................... 29

CERTIFICATION ................................................................................................ 30

STATEMENT REGARDING ORAL ARGUMENTS ........................................... 30

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Anderson v. Creighton*
     483 U.S. 635 (1987)................................................................. 5, 6, 26

*Barry v. Moran*
     661 F.3d 696 (1st Cir. 2011)....................................... 11, 15, 16, 23

*Behrens v. Pelletier*
     516 U.S. 299  (1996)....................................................................... 6

*Boals v. Gray*
     775 F.2d 686 (6th Cir. 1985)........................................................ 11

*Boddie v. City of Columbus*
     989 F.2d 745 (5th Cir. 1993)........................................................ 10

*Bowlin v. Arkansas Dept. of Health*
     371 Fed. Appx. 703 (8th Cir. 2010).............................................. 21

*Busey v. Board of County Commissioners of County of Shawnee, Kansas*
     277 F.Supp.2d 1095 (D. Kan. 2003)................................. 12, 24, 25

*Cobb v. Pozzi*
     363 F.3d 89 (2nd Cir. 2004)................................................... 10, 11

*Connick v. Myers*
     461 U.S. 138 (1983).............................................................. 9, 10, 11

*D'Angelo v. School Board of Polk County, Fla.*
     497 F.3d 1203 (11th Cir. 2007) .................................................... 10

*Dye v. Office of the Racing Commission*
     702 F.3d 286 (6th Cir. 2012)........................................................ 19

*Edwards v. City of Goldsboro*
     178 F.3d 231 (4th Cir. 1999)........................................................ 11

*Fasoli v. City of Stamford*
  2014 W.L. 6808679 (D. Conn. 2014) ............................................................ 21

*Foy v. Holston*
  94 F.3d 1528 (11th Cir. 1996) ...................................................................... 8

*Gann v. Cline*
  519 F.3d 1090 (10th Cir. 2008) ................................................................... 23

*Greer v. City of Warren*
  2012 W.L. 1014658 (W.D. Ark) .................................................................. 21

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982) ............................................................................... 14, 26

*Hicks v. City of Watonga*
  942 F.2d 737 (10th Cir. 1991) ................................................................. 20, 26

*Hughes v. Stottlemyre*
  506 F.3d 675 (8th Cir. 2007) ............................................................ 19, 20, 21

*Hutton v. Maynard*
  2015 W.L. 114723 (E.D. Ark. 2015) ........................................................... 21

*Jantzen v. Hawkins*
  188 F.3d 1247 (10th Cir. 1999) ................................................................... 23

*Johnson v. Clifton*
  74 F.3d 1087 (11th Cir. 1996) .................................................................... 5, 6

*Johnson v. Jones*
  515 U.S. 304 (1995) ................................................................................... 5, 6

*Kaufmann v. Higgs*
  697 F.3d 1297 (10th Cir. 2012) .................................................................... 7

*Klug v. Chicago School Reform Board of Trustees*
  197 F.3d 853 (7th Cir. 1999) ...................................................................... 11

*Laidley v. McClain*
  914 F.2d 1386 (10th Cir. 1990) ................................................................... 22

*LaRu v. Ridlon*
  98 F.3d 659 (1st Cir. 1996)............................................................................. 16

*Lewis v. City of Ft. Collins*
  903 F.2d 752 (10th Cir. 1990).......................................................................... 26

*Malley v. Briggs*
  475 U.S. 335 (1986).......................................................................................... 7

*Martin v. City of Del City*
  179 F.3d 882 (10th Cir. 1999)................................................................. 9, 11, 12

*Mason v. Oklahoma Turnpike Authority*
  115 F.3d 1442 (10th Cir. 1997) ....................................................................... 22

*McDonnell Douglas Corp. v. Green*
  411 U.S. 782 (1973)......................................................... 1, 18, 19, 20, 21, 25

*Medina v. Cram*
  252 F.3d 1124 (10th Cir. 2001) ......................................................................... 4

*Mick v. Brewer*
  76 F.3d 1127 (10th Cir. 1996).......................................................................... 26

*Mitchell v. Forsyth*
  472 U.S. 511 (1985)........................................................................................... 5

*Morris v. City of Colorado Springs*
  2010 W.L. 728554 (D. Colo.).......................................................................... 12

*Mt. Healthy City School District Board of Education v. Doyle*
  429 U.S. 274 (1997).................................................................................... 19, 21

*Ohio Civil Service Employees Assoc. v. Seiter*
  858 F.2d 1171 (6th Cir. 1988).......................................................................... 26

*Padilla-Garcia v. Guillermo Rodriguez*
  212 F.3d 69 (1st Cir. 2000).............................................................................. 15

*Pray v. City of Sandusky*
  49 F.3d 1154 (6th Cir. 1995)............................................................................ 26

*Riggins v. Goodman*
    572 F.3d 1101 (10th Cir. 2009) .......................................................... 4

*Rodriguez v. Superior Court*
    2010 W.L. 3769262 (Cal. App. 2 Dist.) ......................................... 8

*Rowland v. Perry*
    41 F.3d 167 (4th Cir. 1994)............................................................ 27

*San Filippo v. Bongiovanni*
    30 F.3d 424 (3d Cir. 1994) ........................................................... 12

*Saucier v. Katz*
    533 U.S. 194 (2001).......................................................................... 3

*Schalk v. Gallemore*
    906 F.2d 491 (10th Cir. 1990).......................................................... 11

*Schultz v. Braga*
    455 F.3d 470 (4th Cir. 2006)........................................................... 27

*St Mary's Honor Center v. Hicks*
    509 U.S. 502 (1993)....................................................................... 20

*Stanley v. City of Dalton*
    219 F.3d 1280 (11th Cir. 2000) ........................................... 6, 7, 8, 27

*Stonecipher v. Valles*
    759 F.3d 1134 (10th Cir. 2014) ....................................................... 5

*Stratton v. Dept. for the Aging for City of New York*
    132 F.3d 869 (2nd Cir. 1997)........................................................ 16

*Swint v. Chambers County Comm'n.*
    514 U.S. 35 (1995).......................................................................... 6

*Wagner v. Jones*
    664 F.3d 259 (8th Cir. 2011)..................................................... 20, 21

*Zavatsky v. O'Brien*
    972 F.Supp.2d 95 (D. Mass. 2012) ............................................... 16

## SUMMARY OF THE ARGUMENT

The district court denied Commissioner Powell's Motion for Summary Judgment on qualified immunity grounds, finding material issues of fact sufficient to support a jury verdict that Walton held a protected political association with former Commissioner Lyons which was a substantial or motivating factor in Defendant's approval of a reduction in force (RIF) of her position at the New Mexico State Land Office. In doing so, the lower court erred in several respects.

To overcome Defendant's assertion of qualified immunity, Plaintiff has the burden of showing facts sufficient for a jury finding that she enjoyed a protected political association adverse to the Defendant's interests and sufficient to rise to the level of a "public concern." She must demonstrate a known political allegiance to Mr. Lyons through political activity, expression of views, or ideology, which were adversarial to Commissioner Powell sufficient to give rise to a discriminatory animus on his part in determining whether to approve the RIF design of Elaine Olah. The record before this Court is devoid of any evidence showing Walton's association with Commissioner Lyons was a matter of "public concern," which is a requirement in the majority of the circuits, including the Tenth Circuit, in deciding First Amendment retaliation claims. On this basis alone, the district court should be reversed and Commissioner Powell be granted qualified immunity.

Qualified immunity procedure places the burden on Plaintiff to establish two separate elements. First, she must establish Defendant's action in approving the RIF was motivated by a desire to retaliate based on her political association with Commissioner Lyons. Stated differently, the Plaintiff must show evidence sufficient for a jury trial on the issue of whether Commissioner Powell violated her First Amendment right of political association. Second, she must establish that Commissioner Powell's RIF approval on April 6, 2011 was not objectively reasonable in the context of all factual circumstances known to him at the time and in view of clearly established law.

In evaluating the first prong of this analysis, the district court appropriately utilized the *McDonnell Douglas* burden-shifting test because there is no direct evidence of discrimination. Yet the district court erred when concluding from assumed facts that Walton established a jury issue on whether Commissioner Powell violated her constitutional right to political association under the First Amendment. Although a majority of the circuits do not apply *McDonnell Douglas* in First Amendment cases, a matter the Tenth Circuit has not determined, there is no reason to deny application of this test especially, as here, when there is no direct record of evidence of discrimination. Nonetheless, even without use of the *McDonnell Douglas* test, Plaintiff does not demonstrate a *prima facie* case for a First Amendment claim based on the facts assumed by the district court.

Whether or not Walton can demonstrate a jury issue on the first prong of the qualified immunity analysis, as a matter of law there is no support for the conclusion Commissioner Powell acted unreasonably in light of all circumstances known to him and under clearly established law. Walton fails in her burden on the second prong. This is because other reasonable officials in Commissioner Powell's position could have believed their action in approving Ms. Olah's RIF design was lawful. Further, the district court used the wrong standard for this second prong when stating that "Walton's right not to be retaliated against because of her political affiliation with the Lyons Administration was clearly established when Powell terminated her position." (Aplt. App. at 000561). The district court failed to apply the more case and context specific test enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001) in evaluating whether the Defendant's actions were objectively reasonable. Because Commissioner Powell, who was not involved in the RIF design and had no knowledge of any political activity or ideology on the part of Walton adverse to his own political views, merely gave final approval to Ms. Olah's work and her RIF recommendations, his actions were objectively reasonable. This conclusion is even more compelling considering not only his personal activity during the 2011 New Mexico legislative session in attempting to restore the proposed budget and personnel cuts, which would have saved Walton's position, but also the lack of any suggestion or evidence of discriminatory animus

Page 3

on the part of Ms. Olah, who was solely responsible for the RIF design, toward
Walton.

This Court should reverse the district court and remand with instructions to
grant Defendant Powell's motion, thereby dismissing him on grounds of qualified
immunity.

## ARGUMENT

I.     **This Court Has Jurisdiction To Hear Commissioner
Powell's Appeal Addressing Whether The District Court
Erred When Determining Walton Established Facts
Sufficient To Conclude She Was The Victim Of A
Constitutional Violation Under Clearly Established Law.**

In her Answer Brief, Walton asserts Commissioner Powell improperly
challenges the district court's ruling that material fact issues exist precluding
summary judgment on whether a *prima facie* case for a constitutional violation is
shown. Walton misconstrues Commissioner Powell's argument.

Because Commissioner Powell asserted qualified immunity, Walton bears a
"heavy two-part burden" of demonstrating 1) the Defendant violated her
constitutional rights, and 2) the right was clearly established at the time of
Defendant's act. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009);
*Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The Supreme Court
established a public official's right to an interlocutory appeal on the denial of
qualified immunity where the disputed issue is whether his conduct violated clearly

established law.  More specifically, where the issue on appeal concerns whether a given set of facts show a violation of clearly established law, an order denying qualified immunity is an immediately appealable "collateral order."  *Mitchell v. Forsyth*, 472 U.S. 511, 527-28 (1985).  In *Johnson v. Jones*, 515 U.S. 304, 319 (1995), the Court clarified *Mitchell* by stating no appeal lies solely on the issue of the sufficiency of the evidence forming the basis of the district court's ruling unless there is no record support for its findings.  Where, however, the appeal challenges whether the facts assumed by the lower court for summary judgment purposes supported the conclusion that the government official violated clearly established law, appellate jurisdiction is appropriate.  *Id.*  The issue whether clearly established law has been violated is one of law and turns on the "objective legal reasonableness" of the official's action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014), *citing Anderson v. Creighton,* 483 U.S. 635, 639 (1987).

Whether a factual basis is present in the record for a finding of a constitutional violation, the first prong of the Plaintiff's two-part burden, "may be addressed by an appellate court because it is part of the core qualified immunity analysis."  *Johnson v. Clifton,* 74 F.3d 1087, 1091 (11th Cir. 1996), *citing*

*Anderson,* 483 U.S. at 641.[1]   The Court in *Clifton* stated that "even if such a determination were not part of the core qualified immunity analysis, it would be 'inextricably intertwined' with [the clearly established law] analysis and within the appellate court's pendent jurisdiction." *Id.*, *citing Swint v. Chambers County Comm'n.,* 514 U.S. 35, 45 (1995).   To be clear, if there is record support for the lower court's findings upon which a qualified immunity determination is made, those findings are not disturbed on appeal and such evidence must be construed in a light most favorable to the non-moving party. *Stanley v. City of Dalton*, 219 F.3d 1280, 1287 (11th Cir. 2000).   On appeal, this Court applies the district court's findings to determine whether a jury could legally find a constitutional violation and also whether those facts would support the conclusion that the public official violated clearly established law through an analysis of the objective reasonableness of his actions.   An appellate court only lacks jurisdiction in this context where the appeal solely attacks the district court's determination whether material fact issues exist on which the qualified immunity decision is based. *Id.*

Turning to the present case, this Court has jurisdiction to consider whether the facts assumed by the district court present a *prima facie* case for a First

---

[1] Addressing a similar argument claiming that factual matter, because disputed, was inappropriate for qualified immunity interlocutory appeal, Justice Scalia in *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996), stated:

> Denial of summary judgment often includes a determination that there are controverted issues of material fact . . . and [*Johnson v. Jones*] surely does not mean that every denial of summary judgment is nonappealable.

Amendment political association claim which, in part, presents a threshold question of whether Walton's claimed association with former Commissioner Lyons was political in nature and, thus, constitutionally protected. If she is able to satisfy this first prong of the two-part qualified immunity analysis, the Court next turns to whether the clearly established law element was met. Under the specific fact setting presented, the issue is whether Commissioner Powell would know that he was violating Walton's constitutional rights in light of clearly established law. *Kaufmann v. Higgs,* 697 F.3d 1297, 1300 (10th Cir. 2012). The district court erroneously framed the question as whether Commissioner Powell would know that Walton had the right not to be terminated based on her political affiliation with a prior administration. In fact, the test is more fact specific. Under the objective legal reasonableness test, even assuming sufficient evidence exists for a jury determination of a constitutional violation, the question is whether a reasonable official in Commissioner Powell's position, in the factual context he faced when he approved Ms. Olah's RIF proposal, would have known his conduct was unlawful. *Stanley,* 219 F.3d at 1286-87. *Citing Malley v. Briggs,* 475 U.S. 335, 343 (1986), the *Stanley* court noted that an official can "guess wrong about the constitutionality of his conduct," provided the mistake is a reasonable one. *Stanley,* 219 F.3d at 1294.

The objective reasonableness of the decision is satisfied for qualified immunity purposes if an official is motivated, at least in part, by lawful considerations. *Id.*, 219 F.3d at 1296, *citing Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996). "Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful and unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity." *Id. See also, Rodriguez v. Superior Court*, 2010 W.L. 3769262 (Cal. App. 2 Dist.). At the summary judgment stage, where it is established that the public official acted objectively reasonable and motivated, at least in part, by lawful considerations, he is entitled to qualified immunity. *Stanley,* 219 F.3d at 1296.

Here, unless the factual circumstances facing Commissioner Powell are plain that he acted objectively unreasonable as a matter of law when approving the RIF design of Ms. Olah, the district court's denial of qualified immunity must be reversed. The lower court laid the groundwork for such a determination by finding that the RIF was a legitimate, non-discriminatory reason for Commissioner Powell's decision. (Aplt. App. at 000559).

This Court has jurisdiction to determine whether the district court appropriately found both a *prima facie* case for a violation of Walton's constitutional rights and whether it was clear to Commissioner Powell, under an

objective reasonableness test in view of clearly established law, that he was acting

illegally. Even if there is a mixed motive in his actions, he is nonetheless entitled

to qualified immunity.

## II.    In The Tenth Circuit, Constitutionally Protected Associational Activity Must Involve Matters Of Public Concern.

Walton's two-part burden in overcoming Commissioner Powell's assertion

of qualified immunity begins by showing that the Defendant violated a

constitutionally protected right she held in her alleged political association with

former Commissioner Lyons.    This requires Walton to establish that her

associational activity with Lyons is fairly characterized as political in nature,

sufficient to be of a "public concern." In her Answer Brief, Walton asserts

Commissioner Powell wrongfully conflates the "public concern" analysis under

First Amendment speech claims with the requirements necessary to advance a

political association claim. Although Walton cites case law from other circuits

which appear to recognize this view, the Tenth Circuit has joined a majority of the

circuits in adopting a "public concern" component for all First Amendment

retaliation claims, including those involving political association. *Martin v. City of

Del City,* 179 F.3d 882 (10th Cir. 1999).

The Supreme Court in *Connick v. Myers,* 461 U.S. 138, 146 (1983), held that

where an employee's speech retaliation claim under the First Amendment does not

touch on expression which "cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight of the judiciary in the name of the First Amendment."  Virtually all circuits have grafted a "public concern" requirement on speech which forms the basis for a First Amendment retaliation claim.  *Id.*  A split in the circuits has apparently developed regarding whether this requirement applies to First Amendment retaliation claims based on freedom of association.  Walton accurately cites cases from the Eleventh Circuit which have not applied a "public concern" requirement in associational claims.  *See D'Angelo v. School Board of Polk County, Fla.*, 497 F.3d 1203 (11th Cir. 2007).   Aside from the Eleventh Circuit, the Fifth Circuit also appears to support the view put forward by Walton.  *See Boddie v. City of Columbus*, 989 F.2d 745, 747 (5th Cir. 1993) (declining to apply a public concern requirement in a First Amendment association claim).  The Supreme Court does not appear to have weighed in on this issue.  However, the Second Circuit in *Cobb v. Pozzi,* 363 F.3d 89, 102-03 (2nd Cir. 2004) stated it was joining the Fourth, Sixth, and Seventh Circuits in holding that a public employee must establish that she was retaliated against in response to associational conduct touching a matter of public concern based, in part, on its reading of *Connick*.  Recognizing *Connick* was a First Amendment speech case, the Second Circuit stated:

> Our reading of *Connick* and the cases supporting it suggest that while
> it was the plaintiff's speech that was under examination, the Court's
> concern over the proper balance of the efficient functioning of the
> government and the First Amendment rights of public employees
> extended more generally to all forms of First Amendment expression,
> including associational activity. This broader concern is reinforced by
> the Court's observation that the issue in each of these cases on which
> it relied was whether public employees "could be prevented or
> 'chilled' by the fear of discharge from joining political parties and
> other associations that . . . public officials might find 'subversive'."

*Cobb,* 363 F.3d at 104, *citing Connick*, 461 U.S. at 145. The Court in *Cobb*
emphasizes there is nothing in *Connick* limiting the public concern requirement to
speech claims alone. *Id.,* 363 F.3d at 104. *Cobb* mentions decisions from other
circuits for a similar holding including *Klug v. Chicago School Reform Board of
Trustees,* 197 F.3d 853 (7th Cir. 1999); *Edwards v. City of Goldsboro,* 178 F.3d
231 (4th Cir. 1999); and *Boals v. Gray*, 775 F.2d 686 (6th Cir. 1985). We can add
the First Circuit to this group from a review of its decision in *Barry v. Moran,* 661
F.3d 696 (1st Cir. 2011). The Court in *Cobb* also cited *Martin v. City of Del City,*
179 F.3d 882, 888 (10th Cir. 1999) for the following: "This Court has applied these
principles from *Connick v. Myers* in deciding First Amendment claims asserted by
a public employee, who had claimed violations of her right to freedom of speech,
freedom of association, and to petition for redress of grievances." *Cobb,* 363 F.3d
at 103. *See also, Schalk v. Gallemore*, 906 F.2d 491, 494 (10th Cir. 1990).

*Martin* involved a First Amendment right of petition claim. This Court
considered whether the *Connick* "public concern" requirement applied. Finding

that a public employee who has petitioned "is in no better position than one who has merely exercised free speech," *Martin* concluded that a "public concern" element was required in such claims. *Id.*, 179 F.3d at 889, *citing San Filippo v. Bongiovanni*, 30 F.3d 424, 449 (3d Cir. 1994). The Court noted: "And, we note, that such other First Amendment claims must meet the 'public concern' test." *Martin*, 179 F.3d at 889. *See also, Morris v. City of Colorado Springs*, 2010 W.L. 728554 at *3 (D. Colo.); *Busey v. Board of County Commissioners of County of Shawnee, Kansas,* 277 F.Supp.2d 1095, 1107 (D. Kan. 2003). (Because plaintiff was unable to show an association based on a political loyalty to certain party beliefs or advocacy of ideas, the claimed association is not protected under the First Amendment). This Court should confirm the "public concern" requirement applies in political association claims in the Tenth Circuit.

> A.    Walton's Associational Activity with Commissioner Lyons Was Not Political in Nature and Does Not Rise to the Level of a Protected Public Concern.

The facts of this case, viewed in a light most favorable to Walton and with deference to the lower court findings, do not support Walton's claims that her associational activity with Commissioner Lyons is protected under the First Amendment. The operative facts can be succinctly summarized.

As is the case in most heated campaigning, during the 2010 election, Commissioner Powell, a Democrat, attacked the record of his predecessor, Mr.

Lyons, a Republican, and accused him of unethical conduct and mismanagement with respect to State Trust lands and money. Yet, Commissioner Powell was opposed at that time by Matthew Rush, not Mr. Lyons, who was not running for re-election. There is little or no evidence Walton supported Mr. Rush or that she campaigned or participated in any way in that election, in a manner subsequently made known to Commissioner Powell. Moreover, there is no evidence Walton did or said anything construed as opposing Commissioner Powell, his ideology, or political views. There is no evidence Commissioner Powell knew of Walton's claimed membership in the Republican Party. It is clear Commissioner Powell had knowledge of the substance of the Larry Barker report where it was alleged that Walton was unqualified for positions held throughout her history with the agency and was the beneficiary of "cronyism" in the Lyons Administration. ("Cronyism" is defined by the online Merriam-Webster dictionary as "the unfair practice by a powerful person such as a politician, of giving jobs and other favors to friends."). The Hemphill letter, assuming Commissioner Powell had actual knowledge of its contents, similarly informed him that Walton was a subject of the Barker report, but then goes on to give a defense of her work history, qualifications, and argues she was not a beneficiary of "cronyism." Although the Hemphill letter warns Commissioner Powell against any retaliatory action, there is no factual matter therein which establishes a political association with Mr. Lyons. Practically

speaking, the Hemphill letter gave Commissioner Powell the same information he
learned from the Barker report.

Commissioner Powell's knowledge at the time he approved the RIF design
of Ms. Olah on April 6, 2011, a process in which he had no personal involvement,
must be viewed in the context of the history of the mandatory budget and
personnel cuts imposed on his administration by Lyons' own recommendations
and the Legislature, not to mention the unsuccessful personal efforts by him and
Ms. Olah to have the two lost FTE's restored through the legislative process.  The
lower court cites, as the strongest evidence supporting a claim of discrimination,
Commissioner Powell's vague and unrelated statements regarding "protected
employees" and the Barker report in the minutes of a meeting at the State Land
Trust's Advisory Board on April 14, 2011 during which he supposedly "glared" at
Plaintiff.  It remains unclear how this activity, assumed as true, is elevated to a
matter of "public concern" or how it can serve as a reasonable inference of
discriminatory animus by Commissioner Powell.  Evaluated in light of the strong
embrace our jurisprudence holds for qualified immunity, as enunciated in *Harlow
v. Fitzgerald* and its progeny, Walton has not met her burden of showing a
protected political association.

The First Circuit has a "public concern" requirement for First Amendment
association claims.  That Court stated that a protected association "must be

political in nature or implicate some other constitutional concern," in order to survive summary judgment. *Barry v. Moran,* 661 F.3d at 704. *Barry* cites another First Circuit case, *Padilla-Garcia v. Guillermo Rodriguez,* 212 F.3d 69 (1st Cir. 2000) which addressed a suit by a municipal planning official whose contract was not renewed by a new mayoral administration of the opposite party. There, Plaintiff alleged her First Amendment rights of association were violated because of her adverse political beliefs which were apparent to the new administration because of her close association with the former mayor and active support for the new mayor's opponent in the primary election. The Court found *prima facie* evidence of a political association with a rival faction and reversed summary judgment in favor of the defense. In doing so, however, the Court made clear that mere evidence of affiliation with a political faction might be insufficient to withstand summary judgment although, in *Padilla-Garcia*, it was known that plaintiff actively campaigned against the new mayor, after which her position was eliminated following the election. *Id.,* 212 F.3d at 75, 76.

The Court in *Barry* stated that a protected political association must involve "the conduct of government, public policy or public controversies." 661 F.3d at 704. It must "inevitably implicate the right to engage in association for the advancement of beliefs and ideas." *Id.* As an example, evidence that "a plaintiff was actively involved in electoral politics in a prominent public role can help

Page 15

establish a political motive for an adverse employment action." *Id.*, 661 F.3d at 705. A plaintiff may escape summary judgment only by "pointing to evidence in the record which, if credited, would permit a rational factfinder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus. Without more, a nonmoving plaintiff-employee's unsupported and speculative assertions regarding political discrimination would not be enough to survive summary judgment." *Id.,* 661 F.3d at 705, *citing LaRu v. Ridlon*, 98 F.3d 659, 661 (1st Cir. 1996). A mere personal association is insufficient to sustain a First Amendment claim. *Barry*, 661 F.3d at 704. Moreover, employment decisions motivated by cronyism, rather than political discrimination, are "lawful, though perhaps unsavory." *Zavatsky v. O'Brien*, 972 F.Supp.2d 95, 99 (D. Mass. 2012), *citing Barry*, 661 F.3d at 708. The Second Circuit, in *Stratton v. Dept. for the Aging for City of New York*, 132 F.3d 869, 880 (2nd Cir. 1997), stated "backscratching, log-rolling, horse-trading, institutional politics, envy, nepotism, [and] spite are not illegal motivations for employment decisions."

Walton identifies nothing in the record showing any activity on her part which was designed to advance or express her political beliefs, ideology, or party allegiance which would have given Commissioner Powell a motive for a discriminatory based adverse employment action. There is no evidence of

campaign activity, statements of belief or ideology, or actions taken by her in opposition to Commissioner Powell's political views. The associational claims arise from statements made about and knowledge by Commissioner Powell of her work history of exempt and classified employment and claims from an investigative reporter that she was not qualified for positions she held during the Lyons Administration, allegedly received through "cronyism." Neither the Barker report nor the Hemphill letter reference anything about Walton's political views, party affiliation, campaign activity, or anything else which can be construed as activity critical of Commissioner Powell's political views or policies. Of note, Walton does not claim protected "non-association." At best, the evidence points to a personal association Walton had with her former boss, who may very well have advanced her career based on that association. The record reflects nothing of a protected political association between the two. Moreover, there is no showing, other than engaging in gross speculation, of any activity taken by Commissioner Powell demonstrating a discriminatory animus contrary to Walton's First Amendment rights. Even if one assumes a jury could determine that Commissioner Powell approved the RIF of Walton's position because he believed she was a "crony" of Mr. Lyons, this does not equate with an action taken for discriminatory reasons rising to the level of a First Amendment concern. The record lacks a required political component not only with respect to Walton's

association with Mr. Lyons, but also concerning Commissioner Powell's decision in approving the RIF.

### III. As A Matter Of Law, Walton Fails To Establish A *Prima Facie* Case For A First Amendment Political Association Retaliation Case.

#### A. The District Court Properly Utilized the *McDonnell Douglas* Burden Shifting Analysis to Walton's First Amendment Claims.

Walton asserts the *McDonnell Douglas Corp. v. Green,* 411 U.S. 782 (1973) burden shifting analysis for Title VII retaliation claims is inappropriate for an assessment of whether Walton has satisfied her burden of showing her political affiliation was a substantial and motivating factor behind the selection of her position for the RIF. The district court utilized the *McDonnell Douglas* test noting that once Walton produced sufficient evidence to establish a constitutional violation, the burden of persuasion shifted to Commissioner Powell to establish a legitimate, nondiscriminatory reason for the decision to terminate the Plaintiff's position through the RIF. Finding that Commissioner Powell carried that burden, the district court moved to a discussion of whether Walton had produced sufficient evidence for a jury to conclude that the Commissioner's proffered reasons were pretextual. The district court proceeded to make this finding. (Aplt. App. at 000559).

The Tenth Circuit has not spoken specifically on whether the *McDonnell Douglas* analysis is appropriate in a First Amendment retaliation context. Defendant acknowledges that a majority of the circuits appear to reject this view. The Sixth Circuit in *Dye v. Office of the Racing Commission,* 702 F.3d 286, 294-95 (6th Cir. 2012), for example, requires a showing that: (1) the plaintiff engaged in constitutionally protected speech or conduct, (2) an adverse action was taken against her, and (3) there was a causal connection between the two. Once the employee establishes a *prima facie* case, the burden then shifts to the employer to demonstrate "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Id. Dye* stated that "unlike in the *McDonnell Douglas* burden shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation cases." *Id.,* 702 F.3d at 295.

Nonetheless, there is authority to support the district court's application of the *McDonnell Douglas* analysis in this case. For example, the Eighth Circuit, in *Hughes v. Stottlemyre*, 506 F.3d 675 (8th Cir. 2007), adopted the primary test for establishing a *prima facie* case of retaliation under the First Amendment expressed in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 (1997). There, the Supreme Court determined that a plaintiff must show she was engaged in protected First Amendment conduct which was a substantial or

motivating factor in the employer's decision to take the adverse employment action. The Court in *Hughes* then applied the *McDonnell Douglas* test for determining whether plaintiff established a case for retaliation sufficient to survive summary judgment. Specifically, *Hughes* stated that after a *prima facie* showing is made by plaintiff, a presumption of retaliation arises, which shifts the burden of production to the employer to advance legitimate, non-discriminatory reasons for the employment action. Once the employer satisfies his burden, "the presumption [of retaliation] drops out and the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against the plaintiff." *Hughes*, 506 F.3d at 679. The Court noted "in some situations, this can be shown indirectly by establishing the employer's proffered reason was a pretext for retaliation." *Id.,* citing *St Mary's Honor Center v. Hicks,* 509 U.S. 502, 510-11 (1993). The ultimate burden remains with the employee "to show that the adverse employment action was motivated by intentional retaliation." *Id.; Hicks*, 509 U.S. at 507 ("the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") The Eighth Circuit in *Hughes* specifically rejected a suggestion that the burden shifting framework of *McDonnell*

*Douglas* is inapplicable to First Amendment retaliation claims. *Id.*, at FN 4.[2] Because there is no direct evidence of retaliation on the part of Commissioner Powell in the record of this case, there is no error by the district court in evaluating this issue under the *McDonnell Douglas* test.

> B. The Record Is Insufficient for a *Prima Facie* Showing that Commissioner Powell Violated Walton's First Amendment Rights.

The record in this case does not support a jury issue on whether Commissioner Powell violated Walton's constitutional rights to political association. As discussed in Appellant's Opening Brief, Walton cannot satisfy the *McDonnell Douglas* burden shifting test for purposes of establishing a *prima facie* case for a First Amendment claim. In part, this conclusion is based on Walton's inability to satisfy her ultimate burden of proving Commissioner Powell's proffered reasons for the elimination of her position through a RIF were pretextual after he demonstrated a legitimate, non-discriminatory reason for the action. Even were this Court to reject the *McDonnell Douglas* analysis, the record remains

---

[2] It has been asserted that *Wagner v. Jones*, 664 F.3d 259, 270 (8th Cir. 2011) overrules *Hughes*. However, a close read of *Wagner* makes clear that the *McDonnell Douglas* burden shifting analysis in First Amendment retaliation cases was not abandoned although the Eighth Circuit declined to use it in that case. *Wagner* adopts the decision of *Hughes v. Stottlemyre* at least for the purposes of recognizing the *Mt. Healthy* burden on plaintiff of proving protected conduct which was a substantial or motivating factor in the employer's decision of adverse employment action. *See also Bowlin v. Arkansas Dept. of Health*, 371 Fed. Appx. 703, 704 (8th Cir. 2010); *Hutton v. Maynard*, 2015 W.L. 114723 at *6 FN9. (E.D. Ark. 2015); *Greer v. City of Warren*, 2012 W.L. 1014658 (W.D. Ark) (*McDonnell Douglas* test applies to First Amendment retaliation cases). Recently, the Court in *Fasoli v. City of Stamford*, 2014 W.L. 6808679 (D. Conn. 2014) recognized the *McDonnell Douglas* framework in evaluating whether a *prima facie* case for First Amendment retaliation has been established although plaintiff brought counts under Title VII as well. *Id.* at *7.

insufficient to avoid summary judgment in view of similar cases decided by this and other courts within the Tenth Circuit.  Cases cited in support of Walton's claim in her Answer Brief are inapposite to the record herein.

In *Laidley v. McClain*, 914 F.2d 1386 (10th Cir. 1990), the plaintiffs, asserting similar claims, actively supported the defendant's political adversary prior to their termination.  As addressed earlier, there is virtually no evidence on the part of Walton tantamount to political activity, the adoption of political beliefs, or known allegiances to ideology adverse to Commissioner Powell.  In *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442 (10th Cir. 1997), the Court reviewed whether there was sufficient evidence to support a jury verdict on the plaintiff's §1983 political patronage claim and whether the district court erred in denying defendant's motion for judgment as a matter of law.  The Court found sufficient evidence supporting the plaintiff's "non-affiliation" claim.  There, plaintiff's position with a state agency was replaced by a political favorite, an act accomplished shortly after the replacement made a significant campaign contribution to the governor.  Plaintiff's replacement was hired as a political favor only after plaintiff himself was threatened with termination when he opposed giving his replacement a permanent position within the agency.  Under these facts, the Court found plaintiff's termination supported an inference that he was the victim of illegal political patronage.

In *Jantzen v. Hawkins*, 188 F.3d 1247 (10th Cir. 1999), the jailer and two deputies, employed with the County Sheriff's office, actively supported the losing candidate in a sheriff election after which they were terminated by the sheriff who prevailed. In *Gann v. Cline*, 519 F.3d 1090 (10th Cir. 2008), plaintiff was terminated in favor of another individual who actively supported the defendant in an election for county commissioner. Plaintiff was known to have failed to support the defendant. This Court established the principle that a right to "non-affiliation" came within the protection of the First Amendment. However, it was crucial in *Gann* that plaintiff's non-affiliation resulted in adverse employment action because the defendant's motivation was to elevate only those who actively supported him politically. Here, Walton does not claim that any failure to support Commissioner Powell in the 2010 election, or that she actively opposed his political views or ideology, resulted in the RIF. There is nothing in the record to support such claims. The closest Walton comes to offering evidence of political activity is her attendance at a Republican campaign event for now Governor Martinez and a restaurant event for Mr. Rush during the 2010 election. Attending one event for Commissioner Powell's opponent does not rise to the level of "active involvement" in a "public role," sufficient for an association of a "public concern." *See Barry*, 661 F.3d at 705. Moreover, there is nothing in the record supporting an inference that Commissioner Powell was aware of or acted upon this information.

Page 23

Walton's case is similar to *Busey v. Board of County Commissioners of the County of Shawnee, Kansas*, 277 F.Supp.2d 1095 (D. Kan. 2003). Plaintiff, a sheriff's deputy, was terminated by the defendant sheriff allegedly on the basis of his political association with the recently ousted former sheriff. Plaintiff's claim alleged he was "identified and perceived as a person with political loyalty" to the former sheriff and a political adversary of the new administration which were substantial or motivating factors in his termination. *Id.*, 277 F.Supp.2d at 1107. Plaintiff acknowledged he had no particular political involvement with the former sheriff or past political campaigns. The *Busey* court reviewed the primary decisions on point in this circuit and the Supreme Court. It noted that in those cases, "the employee's political support of the defendant's political rival raised the concern that the employee's termination was based on the employee's political loyalties. By contrast, the record in this case reveals no evidence regarding the political motivation of defendant's employment action against Busey. Even assuming that defendant's adverse employment action was motivated by Busey's loyalty to [the former sheriff], to rise to the level of a First Amendment violation, the defendant's adverse employment action must be motivated by political loyalty." *Id.*, at 277 F.Supp.2d at 1109. Concluding that plaintiff showed no activity protected under the First Amendment such as known involvement in campaigns or the expression of political views, but only a perceived political

loyalty, the Court concluded there was no evidence of a political association sufficient to avoid summary judgement.

Similar to the facts in *Busey*, Walton can point to no evidence, other than a claimed perceived loyalty to former Commissioner Lyons, of any known activity of a political nature adverse to Commissioner Powell in support of her claims. Walton is unable to satisfy her burden under the *McDonnell Douglas* framework in establishing a *prima facie* case of a First Amendment violation. Even without application of *McDonnell Douglas*, there is insufficient evidence in the record which elevates this case beyond an employee grievance over the elimination of her position through a legislatively mandated RIF. Because there are no First Amendment political association implications, Walton does not establish a constitutional violation, thus failing the first prong of the qualified immunity analysis.

## IV. Commissioner Powell's Approval Of The RIF Was Objectively Reasonable And He Is Entitled To Qualified Immunity.

Under the second prong of the qualified immunity analysis, courts look to the objective legal reasonableness of the defendant's actions taken, "analyzing claims of immunity on a fact-specific case by case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed."

*Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995). *See also, Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir. 1996) (Objective reasonableness measured by clearly established law and information known to defendant at the time). Those circumstances and existing authority "must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Ohio Civil Service Employees Assoc. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) *citing Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This Court found that the objective reasonableness standard, first enunciated in *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), is necessary "to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Lewis v. City of Ft. Collins,* 903 F.2d 752, 755 (10th Cir. 1990). To defeat a claim of objective reasonableness, the plaintiff must point "to specific evidence that the officials' actions were improperly motivated." *Id.  See also, Hicks v. City of Watonga*, 942 F.2d 737, (10th Cir. 1991) (Plaintiff put forward no specific evidence that the police chief in terminating plaintiff was "improperly motivated" aside from reciting conclusions of bias, etc.). There is no place in this analysis for the subjective evaluation of matters such as "the officer's motives, intent, or propensities," all of which are irrelevant. *Schultz v. Braga,* 455 F.3d 470,

477 (4th Cir. 2006). "The immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question." *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994). This avoids "second guessing of the reasonableness of actions with the benefit of 20/20 hindsight" and "limits the need for decision-makers to sort through conflicting versions of the 'actual' facts . . ." *Id.* In evaluating objective legal reasonableness, if the official is objectively determined to have acted, at least in part by lawful considerations, he is entitled to qualified immunity. *Stanley,* 219 F.3d at 1297-98.

A close review of the findings in support of the district court decision denying Commissioner Powell qualified immunity reveals this test of objective reasonableness was met. The district court noted that Commissioner Powell attacked his predecessor's record during a campaign in which Plaintiff had little or no involvement in supporting a political adversary, in a manner subsequently made known to the Defendant. Although the district court found that it was generally known throughout the agency that Walton supported Commissioner Lyons and was a member of the Republican Party, there is nothing in the record showing Commissioner Powell was made aware of these supposed allegiances nor is there any evidence this "support" was based on political matters sensitive to First Amendment concerns. Information learned by Commissioner Powell through the Barker report, Hemphill letter, and even Walton's post-election phone call to him,

merely suggested that Walton had been, at one time, an exempt employee in the Lyons Administration who was later placed into classified positions.    These sources also informed the Defendant that Walton was considered, at least by Mr. Barker, to be unqualified for the classified jobs within the agency allegedly obtained through "cronyism."    There is no support in the record to conclude that Commissioner Powell understood Barker's use of the term "cronyism" meant Walton had a political affiliation with Lyons based on political ideology antagonistic to Commissioner Powell sufficient for protection under the First Amendment.    There is nothing in the record suggesting anyone in the agency, including Commissioner Powell, viewed Walton as a political "crony" of Mr. Lyons or unqualified for the positions she held.    Commissioner Powell's view of Barker as the investigative journalist "gold standard" does nothing to advance any claim that Walton's known political ideology was adversarial to the new administration.

The district court also found indisputedly that Commissioner Powell had a legitimate, non-discriminatory reason for approving the RIF of Plaintiff's position. Ms. Olah, who had virtually full autonomy in conducting an agency-wide review and design of the RIF following failed efforts to legislatively recapture the two cut FTE's, clearly had no knowledge of Walton's beliefs or allegiances, at least that which touched on protected political matters.    Any finding that Ms. Olah held any

discriminatory animus would require gross speculation because there is no evidence to support such a claim. Any objective analysis of the circumstances of the actions taken by Commissioner Powell in approving her RIF design, must conclude that his approval was little more than a "rubber stamp" of Ms. Olah's work. The record is simply devoid of evidence or legal inferences sufficient to overcome a grant of qualified immunity to this Defendant under the objective reasonableness test. The district court erred in holding otherwise.

## CONCLUSION

The district court erred in denying Commissioner Powell's Motion for Summary Judgment on qualified immunity grounds. Walton fails in her burden of establishing the two requisite prongs of the qualified immunity analysis. First, based on the facts and inferences relied on by the district court, she is unable to establish a protected political association with former Commissioner Lyons. Walton also fails in establishing *prima facie* evidence showing Commissioner Powell violated her constitutional right of political association, assuming her relationship with Commissioner Lyons was political in nature. Finally, whether or not the first prong of the analysis is established, Walton cannot show Commissioner Powell was objectively unreasonable in light of clearly established law and the circumstances he faced when approving the RIF design of Elaine Olah on April 6, 2011.

This Court must reverse the district court's denial of Commissioner Powell's Motion for Summary Judgment and remand the case with directions to grant qualified immunity, dismissing this case with prejudice.

## CERTIFICATION

Appellant's Reply Brief complies with Type-Volume Limitation of Fed.R.App.P. 32(a)(7)(B) because it contains 6,980 words excluding parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(3).

I further certify:  (1) Any privacy redactions have been made; (2) that the hard copies submitted to the Court are exact copies of the version submitted electronically; and (3) the electronic submission has been scanned for viruses using the most recent version of AVG CloudCare AntiVirus.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel submits that oral argument will aid the decisional process as this case involves not only important public policy issues within the Tenth Circuit, but involves certain issues in which there are splits within the circuits or matters of first impression within the Tenth Circuit.

Respectfully submitted this 30th day of March, 2015.

HATCHER & TEBO, P.A.


BY: <u>*/s/ Scott P. Hatcher*</u>
      Scott P. Hatcher, Esq.
      Emma D. B. Weber, Esq.
      150 Washington Avenue, Suite 204
      Santa Fe, NM 87501
      (505) 983-6525
      Attorneys for Defendant/Appellant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of March, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel registered to receive electronic service to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Jack Hardwick
SOMMER UDALL SUTIN
HARDWICK & HYATT, P.A.
P. O. Box 1984
Santa Fe, New Mexico 87504-1984
(505) 982-4676
Attorney for Plaintiff

<u>*/s/ Scott P. Hatcher*</u>
Scott P. Hatcher